IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ANGELA D. GRYNER                                                                    PLAINTIFF

v.                              CASE NO.         11-2221

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

The plaintiff filed her applications for DIB and SSI on March 19, 2009, alleging an onset date of January 8, 2007, due to plaintiff's spine and nerve damage (T. 188).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on January 6, 2010.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 34 years of age and possessed a High School Education with three years of college (T. 195).  The Plaintiff had past relevant

work ("PRW") experience as a Billing Clerk, Store Clerk, Cook and various other trades  (T. 189).

On April 16, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's back disorder post cervical discectomy and affective disorder (anxiety) did not meet or equal any Appendix 1 listing.  T. 55.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work with additional restrictions T. 56. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of the representative occupations of School Crossing Guard, School Bus Monitor, Traffic Checker, and Maid.  T. 61.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

A.  Relevant Time Period

In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. See 42 U.S.C. §§ 416(I), 423(c); *Stephens v. Shalala*, 46 F.3d 37, 39 (8th Cir.1995) (per curiam) (*citing Battles v. Sullivan*, 902 F.2d 657, 659 (8th Cir.1990)). Evidence of a disability subsequent to the expiration of one's insured status can be relevant, however, in helping to elucidate a medical condition during the time for which benefits might be rewarded. *See Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir.1989) ( Fowler );

*Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir.1985) ( Martonik ).

There is no insured status requirement, however, for SSI benefits. In order to qualify for SSI benefits on the basis of disability under section 1602 for the Act, 42 U.S.C. § 1381a, a claimant must be a "disabled individual" and meet certain need requirements. The definition of "disabled individual" found in section 1614(a), 42 U.S.C. § 1382c(a), is virtually identical to the section 223 definition quoted above. *Fillou v. Heckler* 622 F.Supp. 346, 347 (D.C.Ill.,1985)

Plaintiff was insured for DIB until September 30, 2007 (Tr. 52). Plaintiff filed her SSI application on March 4, 2009 (Tr. 52, 169-71). SSI benefits cannot be recovered retroactively. 20 C.F.R. § 416.335. Thus, the time period at issue is from March 4, 2009, through April 16, 2010, the date of the ALJ's decision.

B.  RFC

The ALJ found that Plaintiff retains the RFC to perform light work, can occasionally climb, balance, stoop, kneel, crouch, and crawl, can occasionally reach overhead, can frequently reach, handle, and finger with her left upper (non-dominant) extremity, can understand, remember, and carry out simple, routine, and repetitive tasks, can respond appropriately to supervisors, co-workers, and usual work situations and can have occasional contact with the general public. (Tr. 56).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*.  This includes medical records, observations of treating

physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

    1. Non-Examining Opinion

Of particular concern to the court is the ALJ determination of the Plaintiff's RFC. A Physical RFC was provided by DDS Dr. Lucy Sauer on April 24, 2009 which found that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently and that she could stand and/or walk and sit for 6 hours in an 8 hour workday, and had no limitations in her ability to push and/or pull (T. 454). Dr. Sauer found no postural limitations (T. 455) and Limited Manipulative Limitations in the Plaintiff's ability to reach in all directions (T. 456). Dr. Sauer notes that the Plaintiff had a "fusion, no complications" and that there was insufficient evidence to rate the claim as of the date last insured. (T. 460). Dr. Bill Payne reviewed and affirmed Dr. Sauer's opinion on June 19, 2009 (T. 468). *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).

    2. Treating Physicians:

In this case an MRI of the Plaintiff's neck in August 2004 showed a "focal disk

protrusion centrally and slightly toward the left at level of C5-6, with possible encroachment on the nerve root at this level. (T. 751).  Another MRI was performed in December 2008 showed a "1 cm left paracentral disc extrusion involving the C5/6 level. (T. 514). When Dr. Queeney examined this MRI in January 2009 he commented that it showed a "large herniated disc off the left side at C5-6 *clearly causing compression of the neural elements*" (T. 441). Dr. Queeney explained to the Plaintiff that his proposed surgery had substantial risk associated with it including that "she probably already has had permanent nerve damage and this may not recover" and that the surgery may completely relieve her pain.  The Plaintiff was willing to accept the risk and proceed with the surgery (Id.).

On January 27, 2009 Dr. Queeney performed an anterior cervical diskectomy with fusion for chronic neck and upper extremity pain.  During the procedure he noted that there was "significant spondylosis dorsally" and a "very large herniated disc" which was removed.  Dr. Queeney noted that he explored the spinal canal and "no further nerve root compression was identified nor any further herniated discs". Dr. Queeney did not see the Plaintiff again until April 2009 noting that she had "missed or canceled all of her postop appointments until today" (T. 447). Dr. Queeney noted that the plates and screws were in good position and she had signs of a good fusion.  While the Plaintiff still complained of pain his only prescription for her was physical therapy and no follow up appointments were scheduled.

Soon after her cervical fusion the Plaintiff still complained of neck pain and saw Dr. Hoang in April 2009 who prescribed Loretab for pain (T. 465) and Diazapam for anxiety (T. 463). The Plaintiff represented to Dr. Hoang that her "deep neck pain improved" but that she still had pain. (T. 465).

It appears that Dr. Ronald Myers began to treat the Plaintiff in July 2009 (T. 509) and through December 2009 (T. 502) although on September 3, 2009 the Dr. records record a New Patient Visit (T. 508). In January 2010 Dr. Myers issued a MSS stating that the Plaintiff could only sit, stand and walk for us to 4 hours in a 8 hour work day, had difficulty with the use of her left hand, and could never crawl or reach above her head and could only occasionally climb. (T. 501). Dr. Myers also found that the Plaintiff would need to take unscheduled breaks and would miss more than four days work per month. (T. 502). Generally, an ALJ is obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. *See Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir.2004); 20 C.F.R. § 404.1527(d)(2). However, it is proper for the ALJ to decline to give weight to the vague, conclusory, and unsupported opinions of a treating physician. *See Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010).

Dr. Myers opinions do not seem supported by his own medical records and he makes no attempt to substantiate his opinions in his MSS. It appears to the court that the ALJ was correct to discount his opinion but his opinion certainly had as much weight as the two opinions of the DSS doctors who never even saw the plaintiff and more importantly could not give any opinion concerning her condition prior to her surgery.

3.  Development of the Record:

Dr. Queeney was the Plaintiff treating physician. A treating physician's opinion "is entitled to substantial weight 'unless it is unsupported by medically acceptable clinical or diagnostic data.'" *See Perks v. Astrue*, 687 F.3d at 1093-94 (*quoting Kirby v. Sullivan*, 923 F.2d 1323, 1328 (8th Cir. 1991)). In addition Dr. Queeney is an orthopedic surgeon who performed surgery on the Plaintiff. Opinions of specialists on issues within their areas of expertise are

"generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994)

In this case neither the Plaintiff's attorney nor the ALJ sought the opinion of Dr. Queeney concerning the ability of the Plaintiff to perform work related activity prior to or after her surgery. The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). Dr. Queeney's opinion is important because his surgical notes of January 2009 reveal that the Plaintiff had "marked instability of the C5-6 segment as well as very large herniated disc off to the left side of the C5-6." (T. 538). The surgical note confirmed an MRI that was performed on the Plaintiff in August 2004 which found a "[F]ocal disk protrusion centrally and slightly toward the left at the level of C5-6, with possible encroachment on the nerve root at this level." (T. 751). It seems imperative to the court to understand what impact this condition had upon the Plaintiff's ability to perform work related activity prior to the

surgery. Likewise, it is imperative for Dr. Queeney to express his opinion concerning the Plaintiff's ability to perform work related activities after his surgery.

The court believes that remand is necessary to allow the ALJ to direct interrogatories to Dr. Queeney to state his opinion on the Plaintiff's ability to perform work related activity prior to and subsequent to his surgery.

**IV.     Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this November 19, 2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE